[Cite as *Toledo City School Dist. Bd. of Edn. v. State Bd. of Edn.*, 2014-Ohio-3741.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Toledo City School District<br>Board of Education et al., | : | |
| | : | |
| Plaintiffs-Appellees/<br>[Cross-Appellants], | : | |
| v. | | No. 14AP-93 |
| | : | (C.P.C. No. 11CV-14120) |
| State Board of Education et al., | | |
| | : | (REGULAR CALENDAR) |
| Defendants-Appellants/<br>[Cross-Appellees]. | : | |
| | : | |
| Dayton City School District<br>Board of Education et al., | : | |
| | : | |
| Plaintiffs-Appellees/<br>[Cross-Appellants], | : | |
| | : | |
| v. | | No. 14AP-94 |
| | : | (C.P.C. No. 11CV-11809) |
| State Board of Education et al., | | |
| | : | (REGULAR CALENDAR) |
| Defendants-Appellants/<br>[Cross-Appellees]. | : | |
| | : | |
| Cleveland Metropolitan School District<br>Board of Education et al., | : | |
| | : | |
| Plaintiffs-Appellees/<br>[Cross-Appellants], | : | |
| | : | |
| v. | | No. 14AP-95 |
| | : | (C.P.C. No. 11CV-13689) |
| State Board of Education et al., | | |
| | : | (REGULAR CALENDAR) |
| Defendants-Appellants/<br>[Cross-Appellees]. | : | |

------

## D E C I S I O N

### Rendered on

------

*Bricker & Eckler LLP, Nicholas A. Pittner, James J. Hughes, III, Susan B. Greenberger* and *Jennifer A. Flint;  Marshall & Melhorn, LLC, Keith Wilkowski* and *Amy M. Natyshak,* for appellees [cross-appellants] Toledo City School District Board of Education.

*Jyllian R. Guerriero,* for appellees [cross-appellants] Dayton City School District Board of Education.

*Wayne J. Belock,* for appellees [cross-appellants] Cleveland Metropolitan School District Board of Education.

*Michael DeWine,* Attorney General, and *Todd R. Marti,* for appellants [cross-appellees].

------

APPEALS from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} In this consolidated appeal, defendants-appellants, State Board of Education of Ohio, State Superintendent of Public Instruction, and Ohio Department of Education (collectively "ODE"), appeal from a judgment entry of the Franklin County Court of Common Pleas in favor of plaintiffs-appellees, denying in part ODE's motion for judgment on the pleadings as to the claims asserted by Toledo City School District Board of Education, Dayton City School District Board of Education, and Cleveland Metropolitan School District Board of Education ("Districts").  Plaintiffs-appellees/cross-appellants, Bonnie Jo Herman, Christine Varwig, Keith Crosby, Ann Marie Snyder, Dessie M. and Christopher Saunders, Edith C. Britt and Angela Barnett (collectively "Individual Plaintiffs"), have filed a cross-appeal from the judgment entry granting in part ODE's motion for judgment on the pleadings as to the claims asserted by Individual Plaintiffs. For the reasons that follow, we affirm the judgment of the trial court.

## A. Facts and Procedural History

{¶ 2}   The three cases involved in this appeal arise out of a school funding dispute between the parties that began in fiscal year ("FY") 2005.[1] The statutory school funding system in place from FY 2005 through FY 2007, required ODE to provide public school districts with funding from the School Foundation based upon the Average Daily Membership ("ADM").  Simply stated, ADM is the number of full-time equivalent ("FTE") students receiving educational services from the school district plus the number of students within the district who chose to receive educational services from other sources, including community schools. In the first full week of October in each fiscal year, the school districts determine their ADM by making a single count of every student eligible to receive educational services in the district ("October Count").  R.C. 3317.03(A) requires the superintendent for each public school district to certify the October Count.  Public school districts in this state receive School Foundation funding based exclusively on a formula utilizing the ADM ("Formula ADM").

{¶ 3}   In contrast to the single-count employed by the public school districts in calculating ADM, community schools count and report their community school average daily membership ("CSADM") on a monthly basis. The CSADM is the number of students attending a particular community school each month, as reported by the community school.  The community school receives funding at a predetermined rate per student for each student attending the school. ODE deducts community school funding from the public school funding in the district in which the community school is located.

{¶ 4}   In *Cincinnati City School Dist. Bd. of Edn. v. State Bd. of Edn. of Ohio*, 176 Ohio App.3d 157, 2008-Ohio-1434 (1st Dist.),[2] the First District Court of Appeals explained the difference between statutory funding for public schools and community schools as follows:

> There is an important distinction between the "snapshot" concept that public schools use to count pupils at one time early in the year and the monthly CSADM report. For school districts, once the Formula ADM has been certified, school-district funding is neither increased nor decreased by the enrollment or withdrawal of pupils after the October count. (The sole exception is the enrollment of a district student in a

---

[1] Under R.C. 9.34, a school district fiscal year begins on July 1 and ends on June 30 of the following year.
[2] We shall refer to this case as *Cincinnati* or *Cincinnati decision.*

> community school after the October count, when such a student has not been included in the Formula ADM.) In contrast, funding for community schools is adjusted monthly based on the number of students reported in the CSADM report. Thus, funding may increase or decrease with the enrollment or withdrawal of a pupil in a community school. So, unlike public schools, community schools are paid for students upon enrollment, but public schools must absorb new students without commensurate additional funding.

*Id.* at ¶ 7, citing R.C. 3317.03(F)(3).

{¶ 5} ODE acknowledges that midway through FY 2005, it discovered that many districts had reported higher numbers of charter school students in their ADM than the charter schools had reported in the CSADM. ODE assumed the CSADM was a more accurate estimate of the number of students attending community schools in a particular district. Accordingly, ODE recalculated the districts' Formula ADM by substituting the CSADM's figures for those reported by the districts in their October Count. As a result of the recalculation, some districts realized a lower ADM for FY 2005 and a corresponding reduction in School Foundation funding.

{¶ 6} Because the public school districts had already received some FY 2005 funding based on the higher ADM, ODE determined that those districts had been overpaid. ODE then decided to recoup the claimed overpayment by reducing future payments to the affected districts. As a consequence of its recalculation of the districts' FY 202005 ADM, ODE reduced Dayton's FY 2005 ADM by approximately 688 FTE, Cleveland's by 575, and Toledo's by 561. After reducing the districts' FY 2005 ADM, ODE determined that Dayton's overpayment was approximately $4,792,304.80, Cleveland's overpayment was approximately $1,857,311, and Toledo's overpayment was approximately $3,576,948. ODE began recouping these funds from Toledo in May 2006 and from Dayton and Cleveland in August 2006. The Districts allege that ODE's action was contrary to law.

{¶ 7} Additionally, the Districts contend that ODE is required to make an upward adjustment to a public school district's Formula ADM to account for community school students who are entitled to attend school in the public school district but who were not included in the District's ADM certified in October, regardless of whether such students were enrolled in a community school when the Districts made the October Count.

According to the Districts, ODE failed to adjust the Districts' Formula ADM in FY 2005 to account for these "add-in students."

{¶ 8}   The Districts also allege that they are entitled to a number of "guarantee" funds in the event that an unanticipated loss of funding occurs due to certain specified circumstances beyond the Districts' control.   The Districts now claim that they were entitled to receive additional School Foundation funding pursuant to one or more of the guarantee provisions, but that ODE did not provide such additional funding in FY 2005 through FY 2007.

{¶ 9}   In 2008, the Cincinnati School District Board of Education ("CSD") filed an action against ODE in Hamilton County Court of Common Pleas disputing ODE's method of calculating funding to public school districts and seeking the return of the sums wrongfully recouped or withheld by ODE in FY 2005 through FY 2007. *See Cincinnati City School Dist. Bd. of Edn. v. State Bd. of Edn. of Ohio,* Hamilton C.P. No. A0603908 (Jan. 5, 2007).[3] CSD alleged that the controlling school funding statutes required ODE to use a public school districts' October Count as the sole basis for determining Formula ADM, and that ODE violated law by employing the CSADM in recalculating the districts' FY 2005 ADM.  The trial court granted relief to CSD, and ODE appealed to the Hamilton County Court of Appeals.

{¶ 10} In *Cincinnati,* the question for the court of appeals was whether the trial court erred when it found that ODE utilized the wrong data in calculating the number of students attending community schools in CSD during FY 2005 and in subsequent years, resulting in reduced funding for CSD during FY 2006 and FY 2007.  *Id.* at ¶ 1. The court of appeals held that the ADM certified by the CSD Superintendent as a result of the October Count was the only method by which ODE could calculate the amount of general public education funding to which a district was entitled, and that Ohio law did not permit ODE to adjust ADM in order to reflect the numbers in the monthly CSADM.  The court further determined that ODE could employ the CSADM only when making the appropriate deductions from public school funding and when making payment to community schools. *Id.,* citing R.C. 3317.022(A) and 3317.03(A).

---

[3] Appellee Dayton City School District was also a party to that litigation.

{¶ 11} After the Supreme Court of Ohio agreed to review the case in *Cincinnati School Dist. Bd. of Edn. v. State Bd. of Edn.*, 119 Ohio St.3d 1498, 2008-Ohio-5500, the parties settled their dispute and dismissed the appeal. *See Cincinnati School Dist. Bd. of Edn. v. State Bd. of Edn.*, 122 Ohio St.3d 557, 2009-Ohio-3628, ¶ 3. According to each of the complaints in this consolidated action, ODE paid CSD a total of $5.9 million in settlement of the CSD litigation, and it paid Dayton City School District more than $7.1 million in partial settlement of their claims in that case.

{¶ 12} In 2009, the General Assembly responded to the *Cincinnati* decision by enacting the following law as part of the biennial budget:

> Except as expressly required under a court judgment not subject to further appeals, or a settlement agreement with a school district executed on or before June 1, 2009, in the case of a school district for which the formula ADM for fiscal year 2005, as reported for that fiscal year under division (A) of section 3317.03 of the Revised Code, was reduced based on enrollment reports for community schools, made under section 3314.08 of the Revised Code, regarding students entitled to attend school in the district, which reduction of formula ADM resulted in a reduction of foundation funding or transitional aid funding for fiscal year 2005, 2006, or 2007, no school district, except a district named in the court's judgment or the settlement agreement, shall have a legal claim for reimbursement of the amount of such reduction in foundation funding or transitional aid funding, and the state shall not have liability for reimbursement of the amount of such reduction in foundation funding or transitional aid funding.

Am.Sub.H.B. No. 1, Section 265.60.70.[4]

{¶ 13} In 2011, the Districts brought suit against ODE seeking a writ of mandamus ordering ODE to calculate and pay the Districts' School Foundation funds for FY 2005, FY 2006, and FY 2007 in accordance with law.[5] In the alternative, the Districts sought a declaration that Ohio law requires ODE to calculate and pay the Districts' School Foundation payments for FY 2005, FY 2006, and FY 2007 on the basis of FY 2005 ADM

---

[4] The General Assembly enacted identical language in the State Budget Provisions for 2011-2012 and 2013-2014. *See* Am.Sub.H.B. No. 153, Section 267.50.60; Am.Sub.H.B. No. 59, Section 263.410.

[5] Each of the three Districts separately filed a petition in the common pleas court for their respective county. Each of the three cases were subsequently transferred to the Franklin County Court of Common Pleas and then consolidated into case No. 11 CV-11809 by order dated January 31, 2012.

as certified by the Districts' superintendents, and to calculate and pay for add-in students as required by law.  The Districts further seek equitable restitution of the funds wrongfully recouped or withheld by ODE. In total, the complaint estimates the loss of funding to the Districts in FY 2006 and FY 2007 at $23,630,000, not including losses due to the add-in claims.

{¶ 14} On April 27, 2012, ODE filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C), arguing that the relevant provisions of the 2009 Budget Bill bar any claim for relief the Districts may have had against ODE. ODE set forth the additional grounds for judgment in its favor as to the claims of Individual Plaintiffs, arguing that they did not have standing to assert claims against ODE.   On January 16, 2014, the trial court issued a judgment entry granting ODE's motion, in part, as to the claims of the Individual Plaintiffs. The trial court held that the Individual Plaintiffs did not have standing to assert a claim against ODE. However, the trial court denied ODE's motion as it relates to the 2009 Budget Bill.  The trial court held that the relevant provision of the 2009 Budget Bill is void and unenforceable inasmuch as it retroactively abolished vested rights of the Districts in violation of the Ohio Constitution, Article II, Section 28.

{¶ 15} Although the trial court's decision did not dispose of all of the claims of the parties, the trial court expressly certified that there was "no just cause for delay." Accordingly, ODE sought an immediate review of the trial court's judgment by filing a notice of appeal to this court on February 7, 2014.  The Individual Plaintiffs filed a cross-appeal.[6]

## B. Assignments of Error on Appeal

{¶ 16} Defendants-appellants assign the following as error:

> The Trial Court erred in holding that Sub. H. B. 1 (128th G.A)
> § 265.60.70; Am. Sub. H. B. 153 (129th G.A.) §267.50.60;
> and Am. Sub. H.B. No. 59 (130th G.A.)§263.410 violate Art.
> II, § 28 of Ohio's Constitution. Doc. No. 141. pp. 16-23.

{¶ 17} For their cross-appeal, cross-appellants assign the following as error:

> The trial court erred in dismissing the Individual Plaintiffs, on
> a motion for judgment on the pleadings, for lack of standing

---

[6] On February 19, 2014, we sua sponte consolidated case Nos. 14AP-93, 14AP-94 and 14AP-95.

as the Complaint(s) allege that the Individual Plaintiffs suffered injuries resulting from ODE's unlawful actions.

## C. Standard of Review

{¶ 18} A party may file a motion for judgment on the pleadings under Civ.R. 12(C), "[a]fter the pleadings are closed but within such time as not to delay the trial." *Franks v. Ohio Dept. of Rehab. & Corr.*, 95 Ohio App.3d 114, 2011-Ohio-2048, ¶ 5. In ruling on a motion for judgment on the pleadings, the court is permitted to consider both the complaint and answer. *State ex rel. Midwest Pride IV, Inc. v. Pontious,* 75 Ohio St.3d 565, 570 (1996). When presented with such a motion, a trial court must construe all the material allegations of the complaint as true, and must draw all reasonable inferences in favor of the nonmoving party. *Id.*, citing *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165 (1973); *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 581 (2001). The court will grant the motion if it finds, beyond doubt, that the plaintiff can prove no set of facts in support of the claim(s) that would entitle him or her to relief. *Pontious* at 570. A judgment on the pleadings dismissing an action is subject to a de novo standard of review in the court of appeals. *RotoSolutions, Inc. v. Crane Plastics Siding, L.L.C.,* 10th Dist. No. 13AP-1, 2013-Ohio-4343, ¶ 13, citing *Franks* at ¶ 5.

{¶ 19} With respect to the appeal, we note that an appellate court reviewing a declaratory judgment matter should apply a de novo standard of review in regard to the trial court's determination of legal issues in the case. *Nelson v. Mohr,* 10th Dist. No. 13AP-130, 2013-Ohio-4506, ¶ 9, citing *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, ¶ 1. An appellate court must also apply the de novo standard of review when examining the constitutionality of a statute. *Crigger v. Crigger*, 10th Dist. No. 04AP-288, 2005-Ohio-519, citing *Liposchak v. Admr., Bur. of Workers' Comp.,* 138 Ohio App.3d 368, 385 (10th Dist.2000), citing *Ohio Historical Soc. v. State Emp. Relations Bd.,* 66 Ohio St.3d 466, 471 (1993).

{¶ 20} As for the cross-appeal, we note that "[s]tanding is a threshold test that, if satisfied, permits the court to go on to decide whether the plaintiff has a good cause of action, and whether the relief sought can or should be granted to plaintiff." *Tiemann v. Univ. of Cincinnati*, 127 Ohio App.3d 312, 325 (10th Dist.1998) (abrogated in part on other grounds). Lack of standing challenges the capacity of a party to bring an action, not

the subject-matter jurisdiction of the court. *State ex rel. Ralkers, Inc. v. Liquor Control Comm.*, 10th Dist. No. 04AP-779, 2004-Ohio-6606, ¶ 35. When an appellate court is presented with a standing issue, it is generally a question of law, and we apply a de novo standard of review. *See Cleveland Elec. Illuminating Co. v. Pub. Util. Comm.,* 76 Ohio St.3d 521, 523 (1996).

## D. Legal Analysis

### 1. Final Appealable Order

{¶ 21} Ordinarily a decision denying a motion for judgment on the pleadings is not a final appealable order. *Ohio Bur. of Workers' Comp. v. Shaffer,* 10th Dist. No. 13AP-67, 2013-Ohio-4570, ¶ 10. Thus, the first question for this court is whether the trial court's decision denying ODE's motion for judgment on the pleadings constitutes a final appealable order. In this regard, "[a] trial court's order is final and appealable only if it meets the requirements of R.C. 2505.02 and, if applicable, Civ.R. 54(B)." *Kopp v. Associated Estates Realty Corp.,* 10th Dist. No. 08AP-819, 2009-Ohio-2595, ¶ 6; *Denham v. New Carlisle*, 86 Ohio St.3d 594, 596 (1999), citing *Chef Italiano Corp. v. Kent State Univ.,* 44 Ohio St.3d 86, 87 (1989). Pursuant to R.C. 2505.02(B)(1) "[a]n order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is * * * [a]n order that affects a substantial right in an action that in effect determines the action and prevents a judgment." A " '[s]ubstantial right' means a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). In denying ODE's motion for judgment on the pleadings, the trial court ruled that the retroactive application of Am.Sub.H.B. No. 1, Section 265.60.70, violates Ohio Constitution, Article II, Section 28. Accordingly, even though the trial court denied ODE's motion for judgment on the pleadings, the trial court's ruling affects a substantial right.

{¶ 22} The requirements of Civ.R. 54(B), are as follows: "[w]hen more than one claim for relief is presented in an action * * * or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay." Although the trial court's judgment entry did not dispose of the Districts' claims for monetary and equitable relief, Civ.R. 54(B) permitted the trial court to enter a final

judgment "upon an express determination that there is no just reason for delay." As noted above, the trial court expressly made that determination.

{¶ 23} For the foregoing reasons, we find that the judgment of the trial court is a final appealable order and that we have jurisdiction of this appeal.

## 2. Retroactive Application of 2009 Budget Bill

{¶ 24} In ODE's sole assignment of error, ODE contends that the relevant provisions of the 2009 Budget Bill legislatively nullify the *Cincinnati* decision and that the Districts are legally barred from asserting any legal claims against the State for reimbursement of School Foundation funds for FY 2005 through FY 2007. The Districts argue that the relevant provisions of the 2009 Budget Bill are void and unenforceable because they violate the constitutional prohibition against retroactive laws.

{¶ 25} Ohio Constitution, Article II, Section 28, states that "[t]he General Assembly shall have no power to pass retroactive laws." The trial court, relying on the first district decision in *Cincinnati*, determined that the Districts had a vested right to School Foundation funding pursuant to the Formula ADM as determined by the October Count, and that the provision in the 2009 Budget Bill that would abrogate the Districts' right to such funding, violated the constitutional prohibition against retroactive laws.

{¶ 26} In making the determination whether retroactive application of a statute violates the Retroactivity Clause of State Constitution, a court is required to engage in a two-step analysis. *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, ¶ 27, *reconsideration denied*, 132 Ohio St.3d 1535, 2012-Ohio-4381, *cert. denied, White v. Ohio*, 133 S.Ct. 1495. "First, the court must determine whether the General Assembly intended that the statute apply retroactively." *Id.* Second, "[i]f the General Assembly has expressly indicated its intention that the statute apply retroactively, the court must determine whether the statute is remedial, in which case retroactive application is permitted, or substantive, in which case retroactive application is forbidden." *Id.* There is no question in this case that the General Assembly intended retroactive application of the relevant provisions of the 2009 Budget Bill inasmuch as the statute expressly applies to school funding for FY 2005 through FY 2007. Thus, the question for this court is whether the nature of the statute is remedial or substantive.

{¶ 27} A statute is "substantive," for purposes of retroactivity analysis, when it impairs or takes away vested rights; affects an accrued substantive right; imposes new or additional burdens, duties, obligations, or liabilities as to a past transaction; creates a new right out of an act that gave no right and imposed no obligation when it occurred; creates a new right; or, gives rise to or takes away the right to sue or defend actions at law. *Id.* at ¶ 35. In contrast, "[r]emedial laws are those that substitute a new or different remedy for the enforcement of an accrued right, as compared to the right itself, * * * and generally come in the form of 'rules of practice, courses of procedure, or methods of review.' " *State ex rel. Kilbane v. Indus. Comm.*, 91 Ohio St.3d 258, 260 (2001). A purely remedial law "does not violate Section 28, Article II of the Ohio Constitution, even when it is applied retroactively." *Beilat v. Beilat*, 87 Ohio St.3d 350, 2000-Ohio-451.

### a. Vested right analysis

{¶ 28} A vested right is "a completed, consummated right for present or future enjoyment; not contingent; unconditional; absolute." *Black's Law Dictionary* 1557 (9th Ed.2011). The Supreme Court of Ohio provided further insight into what it means for someone to have a "vested" right in *State ex rel. Jordan v. Indus. Comm.,* 120 Ohio St.3d 412, 2008-Ohio-6137, ¶ 9:

> A "vested right" can "be created by common law or statute and is generally understood to be the power to lawfully do certain actions or possess certain things; in essence, it is a property right." *Washington Cty. Taxpayers Assn. v. Peppel* (1992), 78 Ohio App.3d 146, 155, 604 N.E.2d 181. It has been described as a right "which it is proper for the state to recognize and protect, and which an individual cannot be deprived of arbitrarily without injustice." *State v. Muqdady* (2000), 110 Ohio Misc.2d 51, 55, 744 N.E.2d 278. A vested right is one that " 'so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent.' " *Harden v. Ohio Atty. Gen.*, 101 Ohio St.3d 137, 2004-Ohio-382, 802 N.E.2d 1112, ¶ 9, quoting Black's Law Dictionary (7th Ed.1999) 1324. A right also cannot be characterized as vested "unless it constitutes more than a 'mere expectation or interest based upon an anticipated continuance of existing laws." *Roberts v. Treasurer* (2001), 147 Ohio App.3d 403, 411, 770 N.E.2d 1085, quoting *In re Emery* (1978), 59 Ohio App.2d 7, 11, 13 O.O.3d 44, 391 N.E.2d 746.

{¶ 29}  ODE contends that the 1938 opinion of the court in *State ex rel. Outcalt v. Guckenberger*, 134 Ohio St. 457 (1938) requires us to find that the Districts' rights to School Foundation funding at the statutory rate is contingent or conditional in nature. We disagree.

{¶ 30} In *Outcalt*, the General Assembly had passed the Whittemore Acts under which a delinquent taxpayer, by paying all current taxes and agreeing to discharge the delinquent taxes in installments, would be relieved of the payment of past penalties and interest. The Hamilton County Prosecutor brought an action against the County Auditor, seeking a court order compelling the County Auditor to charge and collect penalties and interest under the prior law. The Supreme Court of Ohio held that the provisions of the Acts, which authorize the remission of the penalties, interest and other charges on unpaid delinquent taxes, do not violate the retroactivity clause. *Id.* at 461. ODE argues that, employing the logic of the *Outcalt* case, the retroactivity clause does not prevent the General Assembly from enacting legislation which diverts unpaid School Foundation funds.

{¶ 31} However, as the Districts have pointed out, the court in *Outcalt* also held that penalties previously paid in discharging tax obligations cannot be refunded through legislative enactment because, after payment into the public treasury, they become a part of the taxes collected and distributed to the subdivisions of the state. *Id.* at 459.  Here, the School Foundation funds at issue are part of ODE's general revenue fund; a fund comprised of property taxes previously levied and collected along with lottery commission profits.  All that remains for ODE to do is to distribute the funds to the Districts pursuant to the statutory formula. In short, School Foundation funds awaiting distribution are not the legal equivalent of uncollected taxes, penalties and interest. Consequently, to the extent that the *Outcalt* decision applies to the facts of this case, it arguably supports the position taken by the Districts.

{¶ 32} ODE also relies on the 1933 opinion of the Supreme Court of Ohio in *Cleveland v. Zangerle*, 127 Ohio St. 91 (1933), in support of its contention that the Districts' right to School Foundation funds is not a vested right. In *Zangerle*, the city of Cleveland sought an order enjoining Cuyahoga County from distributing Intangible Tax Act revenues to public libraries and township park districts pursuant to newly enacted Am.Sub.S.B. No. 239. The General Assembly had enacted the Intangible Tax Law in

January 1, 1933, but the Supreme Court of Ohio ruled that certain "distributive features" of the Act were unconstitutional. *Id* at 92, citing *Friedlander, County Treas., v. Gorman Pros. Atty.*, 126 Ohio St. 163 (1933). The General Assembly responded by enacting new legislation requiring the distribution of Intangible Tax Act revenue to libraries and parks. After much of the Intangible Tax revenue had been collected, but before any of the revenue was distributed, the city of Cleveland sought a court order compelling Cuyahoga County to distribute the revenue according to prior law. The city of Cleveland alleged that Am.Sub.S.B. No. 239 violated Ohio Constitution, Article II, Section 28.  The Supreme Court of Ohio concluded that the enactment was not unconstitutionally retroactive for the following reason:

> *No governmental subdivision of the state has any vested right, at least until distribution is made*, in any taxes levied and in the process of collection. Until such distribution is made, the Legislature of Ohio is fully competent to divert the proceeds among those local subdivisions as it deems best to meet the emergencies which it finds to exist. So far as any political subdivision of the state is concerned, there can be no vested right, although a case might arise where private interests might intervene and be so affected as to give rise to a vested interest. The provisions of Amended Senate Bill No. 239, so far as they relate to the future distribution of the proceeds of the taxes, are not retroactive, but prospective, in character, and it is not violative of section 28 of article II of the Constitution; nor can it be said that the city had any contractual obligation with the state which was impaired by the passage of Amended Senate Bill No. 239.

(Emphasis added.) *Id.* at 92-93.

{¶ 33} ODE seizes upon the highlighted language in the *Zangerle* opinion in arguing that the Districts' right to School Foundation funding at the level dictated by Formula ADM never "vested," because ODE chose to distribute School Foundation funds pursuant to a different formula in FY 2005 through FY 2007. The Districts argue that their right to School Foundation funding at the level dictated by the General Assembly vested when ODE paid some of the Districts' FY 2005 School Foundation funding pursuant to the Formula ADM, before making the decision to recoup the alleged overpayment.

{¶ 34} ODE acknowledges that it initially paid a portion of the Districts' FY 2005 School Foundation funding pursuant to the Formula ADM as determined by the October Count. There is no question that ODE subsequently determined that there had been an overpayment to the Districts and that ODE recouped those funds out of future payments beginning in FY 2006. The *Cincinnati* case holds that such recoupment is unlawful.

{¶ 35} The Districts argue that under the rule of law in *Zangerle*, their right to the alleged overpayment of School Foundation funds vested when the funds were initially paid. The Districts argue that the 2009 Budget Bill, which absolves the State of Ohio from any liability to the Districts for the sums unlawfully recouped by ODE, effectively abolished a vested right. According to the Districts, it follows that the 2009 legislation violates the retroactivity clause of the Ohio Constitution. We disagree.

{¶ 36} The problem with the Districts' argument is that a statutory right cannot be characterized as vested "unless it constitutes more than a 'mere expectation or interest based upon an anticipated continuance of existing laws.' " *Roberts v. Treasurer*, 147 Ohio App.3d 403, 411 (2001), quoting *In re Emery*, 59 Ohio App.2d 7, 11 (1st Dist.1978). Indeed, the Supreme Court of Ohio has stated "that there is no vested right in an existing statute that will preclude the General Assembly from changing it." *State ex rel. Kenton City School Dist. v. State Bd. of Edn.,* 174 Ohio St. 257 (1963). In our view, the fact that ODE had the statutory right to control all distributions of School Foundation payments to the Districts in a given fiscal year, including the authority to recoup overpayments out of future distributions, requires us to conclude that the Districts' statutory right to School Foundation funds is conditional or contingent rather than absolute or vested.

{¶ 37} Moreover, even if we were to hold that the 2009 Budget Bill is unconstitutionally retroactive as it pertains to the funds that were paid to the Districts but unlawfully recouped, the Districts also seek to recover School Foundation funds that remained unpaid by ODE in FY 2005 through FY 2007. As noted above, the Districts contend that the recalculation of their ADM in FY 2005 resulted in an additional loss of School Foundation funds in the remainder of FY 2005 and over the next two fiscal years.

{¶ 38} In short, we cannot agree with the Districts' contention that the 2009 Budget Bill is unconstitutionally retroactive because it impairs or takes away a vested right.

### b. Substantive Right analysis

{¶ 39} Even though we agree with ODE that the Districts' right to the disputed School Foundation funds was not a vested right, a statute may still be "substantive" in nature, for purposes of a constitutional retroactivity, if it affects an accrued substantive right. *Cook* at ¶ 35. Indeed, the Districts have cited to the decision of the Supreme Court of Ohio in *Kenton,* in support of their contention that the right to School Foundation funding at the statutory level is a substantive right that accrued under existing law. The Districts argue that the 2009 Budget Bill is unconstitutionally retroactive because it impairs an accrued substantive right. We agree.

{¶ 40} The *Kenton* case addressed a public school district's rights under the version of R.C. 3317.02, in effect in 1960, which guaranteed a school district certain minimum payments for three years in the event of a consolidation with another school district. In 1960, the Kenton City School District qualified for such guarantees by virtue of its consolidation with another district. However, in 1961, the General Assembly amended the statute in a manner that disqualified Kenton from receiving future guarantees.

{¶ 41} In *Kenton,* the court reiterated the general rule: "[t]hat there is no vested right in an existing statute which will preclude the General Assembly from changing it." *Id.* at 260. However, having made that statement, the court went on to determine the true nature of the district's "right" to guaranteed funding under the 1960 law. In so doing, the court stated:

> To be guaranteed a minimum amount of money would be a substantive right, whether the guarantee is to a political subdivision or to an individual.
>
> Here we have a statute which guaranteed a school district that in the event of a consolidation with another school district there would be a certain minimum payment to the consolidated district for a period of three years. Inasmuch as the statute was in force at the time of the consolidation in the present case, a right accrued to the consolidated district which, if the statute had not been amended, could have beyond question been enforced by a writ of mandamus. There was nothing discretionary about such provision.

*Id.* at 261-62.

{¶ 42} Applying the logic of the *Kenton* case herein, we find that the Districts had a substantive right to School Foundation funds that accrued under the statutory law in

place for FY 2005 through FY 2007. The Districts seek to enforce their accrued statutory right in this litigation. The *Cincinnati* decision holds that ODE does not have discretion to deviate from the Formula ADM in determining public school funding and that the right of a public school district to such funding is enforceable by a writ of mandamus. Accordingly, to the extent that the 2009 Budget Bill nullifies the Districts' statutory right to School Foundation funding in FY 2005 through FY 2007, the Budget Bill affects a substantive right belonging to the Districts. As such, the relevant portion of the 2009 Budget Bill is unconstitutionally retroactive in violation of the Ohio Constitution, Article II, Section 28.

{¶ 43} ODE attempts to distinguish *Kenton* on the basis that it addressed the amendment of a statute whereas the General Assembly, in this case, enacted separate legislation without amending or repealing prior law. In terms of the retroactivity clause of the Ohio Constitution, this is a distinction without a difference.

{¶ 44} In the context of statutory rights, the retroactivity analysis under R.C. 1.58(A)(2) mirrors the constitutional retroactivity analysis under Ohio Constitution, Article II, Section 28. *Zempter v. Ohio State Grange Mut. Ins. Co.,* 4th Dist. No. 95-CA-2326 (Sept. 6, 1995). Indeed, R.C. 1.58(A)(2) prohibits the General Assembly from amending a statute in such a way as to affect substantive rights accrued under the prior version of the law. *Id.*[7] Although R.C. 1.58(A)(2) does not apply in this case because the 2009 Budget Bill did not expressly amend the relevant school funding laws, the 2009 Budget Bill is unconstitutionally retroactive, nonetheless, because it affects a substantive right of the Districts that accrued under statutory law. As noted above, the *Kenton* case is instructive because it establishes that a public school district's right to School Foundation funding under existing law is a substantive right. Because the statutory right is substantive in nature, the retroactivity clause in the Ohio Constitution, Article II, Section 28 prohibits the General Assembly from enacting a law that reaches back in time to take away that right.

---

[7]R.C 1.58 provides in relevant part as follows:
"(A) The reenactment, amendment, or repeal of a statute does not, except as provided in division (B) of this section: (1) Affect the prior operation of the statute or any prior action taken thereunder; (2) Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder * * *"

{¶ 45} ODE next contends that the Retroactivity Clause of the Ohio Constitution does not apply in this case because the Districts are political subdivisions of this State and, consequently, the General Assembly is empowered to retroactively waive or impair their rights without violating the Ohio Consitution, Article II, Section 28. In making this argument, ODE relies, in large part, on a decision of the Supreme Court of Missouri in *Savannah R–III School Dist. v. Public School Retirement Sys. of Missouri*, 950 S.W.2d 854 (Mo.1997).

{¶ 46} In *Savannah R–III,* a group of retired school teachers sought to block application of an amendment to the statute governing contributions to state teachers' retirement system. *Id.* at 857. The amended law nullified a prior decision in a class action brought by school districts against the retirement system that required the retirement system to refund certain past contributions. *Id.* In ruling that the amendment was constitutional, the Supreme Court of Missouri reasoned that Missouri's constitutional ban on retroactive laws was intended to protect citizens not political subdivisions, and that the Missouri legislature may pass laws waiving the rights of the state or its political subdivisions. *Id.* at 858, citing Missouri Constitution, Article I, Section 13. Therein, the court stated:

> Because the retrospective law prohibition was intended to protect citizens and not the state, the legislature may constitutionally pass retrospective laws that waive the rights of the state. All of the representative plaintiffs are school districts. "School districts are bodies corporate, instrumentalities of the state established by statute to facilitate effectual discharge of the General Assembly's constitutional mandate to establish and maintain free public schools * * *" As "creatures of the legislature," the rights and responsibilities of school districts are created and governed by the legislature. *Id. Hence, the legislature may waive or impair the vested rights of school districts without violating the retrospective law prohibition.* The analysis of this constitutional claim would be different had any one of the named parties been a teacher.

(Citations omitted.)(Emphasis added.)

{¶ 47} ODE argues that we should adopt the reasoning of the Supreme Court of Missouri in *Savannah R–III* in ruling on the retroactivity issue in this case. However, the pertinent case law in Ohio, including *Zangerle* and *Outcalt*, holds that the retroactivity

clause prohibits the General Assembly from enacting laws that retroactively impair vested rights of political subdivisions. *See Hamilton Cty. Commrs. v. Rosche,* 50 Ohio St. 103 (1893); *State ex rel. Crotty v. Zangerle, Aud.,* 133 Ohio St. 532 (1938). Thus, Ohio law is directly at odds with Missouri law on this issue. Similarly, as the Supreme Court stated in *Kenton,* a public school district's guaranteed statutory right to School Foundation funding is an accrued substantive right "whether the guarantee is to political subdivision or an individual." *Id.* at 262. Thus, to the extent that *Savannah R–III* exemplifies Missouri's approach to the issue of constitutional retroactivity, Ohio has not adopted that approach in reviewing similar issues under Ohio Constitution, Article II, Section 28.[8]

{¶ 48} Finally, we disagree with ODE's contention that a victory by the Districts in this litigation comes at the expense of Ohio Constitution, Article VI, Section 2, which provides that "the General Assembly shall make such provisions * * * [to] secure a thorough and efficient system of common schools." Contrary to ODE's assertion, the question whether it is more thorough and efficient to use the CSADM in determining public school funding is not a question raised in this litigation.[9] Moreover, the *Cincinnati* decision represents Ohio law on the statutory school funding issue in this case.

{¶ 49} In the *Cincinnati* decision, the first district held that ODE's conduct in using the CSADM to adjust Formula ADM violated the only methodology authorized by the General Assembly for determining School Foundation funding for public school districts in Ohio. *Id.* at ¶ 23-29. The clear purpose of the 2009 Budget Bill is to legislatively nullify the Districts cause of action against the State for reimbursement of School Foundation funds either wrongfully recouped or withheld by ODE in FY 2005 through FY 2007. Because the legislation purports to take away the Districts accrued substantive right to School Foundation payments in FY 2005 through FY 2007, the relevant provision in the 2009 Budget Bill violates Ohio Constitution, Article II, Section 28.

---

[8] We note that at least one appellate district in Missouri has declined to extend *Savannah R–III* to a public school district's claim against the State Legal Expense Fund. *P.L.S. ex rel. Shelton v. Koster*, 360 S.W.3d 82005, 813, (Mo.App.2011) "[A] school district is not an 'agency of the state' in the same way that we understand a department or a division of the machinery of state government to be." *Id.* at 819-20.

[9] As the first district noted in the *Cincinnati* decision, when the General Assembly amended the relevant sections of the Revised Code in 2007, it chose "not to amend the definition of Formula ADM or to alter the two different reporting and payment systems for Formula ADM and CSADM." *Id.* at ¶ 28.

{¶ 50} Based upon the foregoing, we hold that the trial court did not err when it denied ODE's motion for judgment on the pleadings, and we overrule ODE's sole assignment of error.

**E. Cross-appeal**

{¶ 51} The trial court granted judgment on the pleadings in favor of ODE as to the claims asserted by the Individual Plaintiffs in this case based upon its determination that the Individual Plaintiffs did not have standing to assert the claims alleged in the complaint. We agree with the trial court.

{¶ 52} In *League of United Latin Am. Citizens v. Kasich*, 10th Dist. No. 10AP-639, 2012-Ohio-947, we set forth the general standing rules as follows:

> Under the doctrine of standing, a litigant must have a personal stake in the matter he or she wishes to litigate. *Tiemann* at 325. Standing requires a litigant to have " 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult * * * questions.' " *Id.* at 325, quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962). In order to have standing, a plaintiff must demonstrate some injury caused by the defendant that has a remedy in law or equity. *Id.* The injury is not required to be large or economic, but it must be palpable. *Id.* Furthermore, *the injury cannot be merely speculative, and it must also be an injury to the plaintiff himself or to a class. Id. An injury that is borne by the population in general, and which does not affect the plaintiff in particular, is not sufficient to confer standing. Id.*, citing *Allen v. Wright*, 468 U.S. 737 (1984). *See also State ex rel. Masterson v. Ohio State Racing Comm.*, 162 Ohio St. 366, 368 (1954) ("private citizens may not restrain official acts when they fail to allege and prove damage to themselves different in character from that sustained by the public generally."). (Citation omitted.)

(Emphasis added.) *Id.* at ¶ 21.[10]

{¶ 53} At the outset, we note that the primary argument made by Individual Plaintiffs in this case is that they have standing to bring this action on their own behalf, rather than as representatives of the Districts. In this regard, we note that "a litigant must

---

[10] *Tiemann v. Univ. of Cincinnati*, 127 Ohio App.3d 312, 325 (10th Dist.1998) (abrogated in part on other grounds).

assert its own rights instead of the claims of third parties, and third-party standing is not favored." *Settlers Bank v. Burton*, 4th Dist. No. 12CA36, 2014-Ohio-335, citing *State v. Sturbois*, 4th Dist. No. 10CA48, 2011-Ohio-2728, ¶ 33. "Third-party standing may, however, be granted when a claimant (1) suffers its own injury in fact, (2) possesses a sufficiently close relationship with the person who possesses the right, and (3) shows some hindrance to seeking relief that stands in the way of the person possessing the right." *Id.*

{¶ 54} Even if we were to find that the Individual Plaintiffs have alleged facts which permit an inference of an injury in fact and, even though the allegations of the petition establish a close relationship between the Individual Plaintiffs and the Districts in which they live and work, we have previously determined that the 2009 Budget Bill does not hinder the Districts' right to seek relief. Consequently, in order for the Individual Plaintiffs to have standing in this case, they must allege sufficient facts which, if taken as true, establish a personal stake in the outcome of this litigation.

{¶ 55} In our view, the facts alleged in the petition fail to establish damage to the Individual Plaintiffs that is different in character from that sustained by others living in the school district. In each of the three cases consolidated herein, the Individual Plaintiffs allege that: they are Ohio taxpayers; that they live in one of the districts, that they own real property within that district; and that they are parents of children who attend public schools within that district. The Individual Plaintiffs in the Dayton City School District additionally allege that the district employs them as public school teachers. Finally, Christopher Sanders, one of the Individual Plaintiffs in the Cleveland City School District, alleges that he is a "certified physical education teacher who is currently employed by Cleveland as an instructional aid and not as a physical education teacher due to reduction in force and school closings in the district." (R. 53.)

{¶ 56} In *Brown v. Columbus City School Dist. Bd. of Edn.*, 10th Dist. No. 08AP-1067, 2009-Ohio-3230, taxpayers and residents of the City brought suit against ODE seeking a declaration that the current per-pupil school funding system was unconstitutional. In affirming the trial court's determination that the taxpayers did not have standing to assert claims against ODE we stated:

> As for private standing, appellants clearly have no private
> standing in this matter. Appellants have no direct personal

> stake in the outcome of the controversy. Appellants have not suffered and are not threatened with any direct and concrete injury in a manner or degree different from that suffered by the public in general. Appellants alleged only that they were taxpayers in the city of Columbus. Appellants do not allege they are students in the Columbus City Schools system or are parents of students in the school system. If the merits of their action were to be unsuccessful, they could show no personal harm or damage that would result as separate from any harm suffered by the general taxpaying public.

*Id.* at ¶ 13.

{¶ 57} Under the *Brown* decision, it is clear that the Individual Plaintiffs do not have standing based solely upon their status as taxpayers who own real property within the Districts. The Individual Plaintiffs argue that the *Brown* decision stands for the proposition that taxpayers in a public school district have standing to sue ODE if they allege that they are parents of public school students in the District. While we agree that a taxpayer who has a child attending school in the District may have a greater interest in public school funding issues than the general public, this fact alone does not tip the scales in favor of the Individual Plaintiffs.

{¶ 58} While the Individual Plaintiffs in this case have alleged that there have been budget cuts and school closings in their respective Districts, as the trial court noted, none of the Individual Plaintiffs have alleged that their children have been denied specific educational opportunities due to ODE's failure to fund their district at the statutory rate or that they lost their jobs as a result of ODE's conduct as alleged in the complaint. Although Individual Plaintiff Christopher Sanders claims that he is "not as a physical education teacher due to reduction in force and school closings in the district," Sanders does not allege that he lost a position as a physical education teacher due to a reduction in force and school closings in the district, nor does he state that the district offered him such a position but did not hire him due to a reduction in force and school closings in the district.

{¶ 59} Without additional operative facts which would support a reasonable inference that ODE's conduct as alleged in the complaint caused or threatened the Individual Plaintiff's with a specific harm different than that suffered by the public in general, the allegations are nothing more than unsupported legal conclusions. As noted

above, an injury in fact "cannot be merely speculative." *League of United Latin Am. Citizens* at ¶ 21, citing *Allen v. Wright*, 468 U.S. 737 (1984).

{¶ 60} Unsupported legal conclusions are not admitted when determining a motion for judgment on the pleadings. *See JP Morgan Chase Bank v. Belden Oak Furniture Outlet, Inc.*, 5th Dist. No. 2010 CA 00049, 2010-Ohio-4444; *Amrhein v. Telb*, 6th Dist. No. L-06-1170, 2006-Ohio-5107. Accordingly, we hold that the trial court did not err when it granted judgment on the pleadings in favor of ODE as to the claims asserted by the Individual Plaintiffs. Accordingly, we overrule the sole assignment of error set forth in the cross-appeal.

**E. Conclusion**

{¶ 61} Having overruled appellants' sole assignment of error and having overruled cross-appellants' sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK and BROWN, JJ., concur.

———————————