WILLIAM H. LYTLE AND HENRY AVERY v. THE CINCINNATI
MANUFACTURING COMPANY.

Money made upon a junior judgment in life can not be distributed to elder
judgments and levies, where five years have elapsed from issuing an ex-
ecution, and the judgment is not revived.

CERTIORARI to the court of common pleas of Hamilton county,
to reverse an order for the distribution of certain moneys made
upon execution.

At November term, 1829, the sheriff returned that he had made
twenty-six thousand eight hundred and sixty dollars upon an ex-
ecution issued on a judgment in favor of Lytle and Avery against
the Cincinnati Manufacturing Company. Upon this return, sev-
eral other judgment creditors appeared, and claimed this money
or a part thereof, and founded their claims upon the following
state of facts:

460]  *October 12, 1820, the Miami Exporting Company recov-
ered a judgment against the Cincinnati Manufacturing Company
for seventeen thousand eight hundred dollars. On the same day,
Samuel Davis, James Findlay, and Jacob Wheeler recovered a
judgment against the same defendants, for ten thousand two hun-
dred and thirty-six dollars and fifty cents. On December 27, 1820,
Lytle and Avery recovered a judgment against the same defend-
ants, for forty-nine thousand six hundred and forty-five dollars
and fifty-nine cents. There was also another small judgment
against the same defendants, in favor of Henry Hafer, which, by
the agreement of all parties, was entitled to a preference, and
about which there was no dispute. Upon the other three judg-
ments, executions were issued, and returned as follows:

MIAMI EXPORTING COMPANY.—Judgment October 12, 1820.

| Execution. | Date. | Return, etc. |
|---|---|---|
| Fi. fa. et lev. fa. | Jan'y 30, 1821. | Levy on land, January 30, 1821. |
| Vendi. | Dec. 8, 1821. | Unsold. |

420

Lytle and Avery *v.* Cincinnati Manufacturing Co.

| Execution. | Date. | Return, etc. |
|---|---|---|
| Al. vendi. | June 19, 1823. | Sold on an execution, in favor of Davis, Findlay, and Wheeler. This return, on motion of plaintiffs, was set aside at August term, 1823, to which the writ was returnable. This judgment was revived by *scire facias*, on December 24, 1829. |

DAVIS AND OTHERS.—*Judgment, October* 12, 1820.

| Execution. | Date. | Return, etc. |
|---|---|---|
| Fi. fa. et lev. fa. | Jan. 31, 1821. | Jan. 31, 1821. Levied on same land, as execution in favor of Mi. Ex. Co. |
| Vendi. | April 2, 1822. | To May 7, 1822. Stayed by injunction. |
| Al. vendi. | June 25, 1823. | Aug. 1, 1823. Sold to J. C. Morris. At August term, 1823, this sale was set aside by the court. |
| *Pl. vendi. | Nov. 11, 1823. | Dec. 15, 1823. Sold [461 to the plaintiffs in execution. This sale, and the valuation, was set aside, by consent, Sept. 3, 1829. |

LYTLE AND AVERY.—*Judgment, December* 27, 1820.

| Execution. | Date. | Return, etc. |
|---|---|---|
| Fi. fa. et lev. fa. | Feb. 8, 1821. | February 9, 1821. Levied on same land, as execution in favor of Mi. Ex. Co. |
| Vendi. | March 27, 1824. | Not given to the sheriff. |
| Al. vendi. | March 23, 1827. | Indorsed, " Judgment assigned to U. S. Bank, March 31, 1827." Stayed by Jones and Fox, June 27, 1827. |

| Execution. | Date. | Return, etc. |
|---|---|---|
| Pl. vendi. | June 16, 1829. | Sold, July 20, 1829, to the Mi. Ex. Co. This sale and the valuation were set aside by consent, Sept. 3, 1829. |
| Al. pl. vendi. | Sept. 10, 1829. | Sold, November 16, 1829, to G. W. Jones, agent U. S. Bank, for twenty-six thousand eight hundred and sixty dollars, the money now in controversy. |

The assignees of the judgment of Lytle and Avery against the Cincinnati Manufacturing Company also offered in evidence a mortgage of the premises levied upon, dated December 11, 1820, executed by William Lytle, William H. Lytle, and Timothy Kirby, in their capacity as trustees of the Cincinnati Manufacturing Company, to William H. Lytle and Henry Avery, to secure the payment of forty-eight thousand eight hundred and six dollars and eighty-two cents. This mortgage was recorded January 9, 1821, and on April 13, 1826, was assigned by Avery and Lytle to the Bank of the United States.

462] *Also, a notice, dated December 21, 1820, signed by David E. Wade, president pro tem., and William Oliver, cashier, served upon the Cincinnati Manufacturing Company, notifying them that the Miami Exporting Company, on the 25th of December then next, would take judgment against the Cincinnati Manufacturing Company upon the same debts for which the judgment had been rendered in favor of the Miami Exporting Company against the Cincinnati Manufacturing Company; and that at the date of this notice, Wade and Oliver acted as the officers of the Miami Exporting Company.

Also, a declaration in assumpsit, signed by Este and Storer, as attorneys for the Miami Exporting Company, against the Cincinnati Manufacturing Company, founded upon the same debt, and served upon the latter company at the same time with the above note.

Also, a bill in chancery, filed in the Supreme Court of Hamilton county, at June term, 1821, by the Miami Exporting Company, against Davis, Findlay, Wheeler, and others, in which the Miami

Lytle and Avery *v.* Cincinnati Manufacturing Co.

Exporting Company charged that Davis and Wheeler, pretending to be two of the trustees of the Cincinnati Manufacturing Company, on September 2, 1820, made a warrant of attorney to Joseph S. Benham, Esq., by virtue of which he confessed the judgment in favor of the Miami Exporting Company against the Cincinnati Manufacturing Company; that the Miami Exporting Company were never consulted by Davis and Wheeler as to the confession of said judgment, or the warrant of attorney to Benham; nor had they any knowledge thereof until after the judgment was confessed; and they deny any and all right in Davis and Wheeler to make said power of attorney in behalf of the Cincinnati Manufacturing Company; and pray that the said judgment be decreed null and void, and completely vacated for the want of authority in Davis and Wheeler to make said warrant of attorney, and for the manifest collusion, fraud, and illegal conduct, on the part of the defendants in the bill, in obtaining the judgment. This bill was dismissed by the complainants the same term at which it was filed, and the injunction allowed therein dissolved.

*Also, the following statement of David E. Wade, which was [**463** admitted in evidence, by consent, as if sworn to, not admitting its truth or competency. David E. Wade states that, in 1820, he was a director of the Miami Exporting Company, and acting as their president *pro tem.;* that the above bill in chancery was filed at the instance of B. Storer, one of the counsel of the bank, Mr. Este being absent; that he was first induced to take some steps in this matter by Henry Avery, who informed him how the judgments were taken, and urged him to file the bill, which he did, by the advice of Storer and two or three of the directors, contrary to his own opinion. He thinks the board of directors were not convened upon the occasion.

The Miami Exporting Company gave in evidence a bill in chancery, and an injunction allowed thereon, filed in the Supreme Court of Hamilton county, on May 18, 1821, by the Cincinnati Manufacturing Company, against the Miami Exporting Company, Oliver M. Spencer, and William Oliver, charging that the warrant of attorney to Benham was unauthorized by the Cincinnati Manufacturing Company, and reciting the allegations contained in the bill filed by the Miami Exporting Company, against the Cincinnati Manufacturing Company, as above set forth; and charging that the Miami Exporting Company had levied an exe

cution on the lands of the Cincinnati Manufacturing Company, and were proceeding to sell the same, and prayed a perpetual injunction. The bill was answered; and, on the final hearing, May 19, 1823, was dismissed, at the costs of the complainants.

Also, the record of the original judgment in favor of the Miami Exporting Company against the Cincinnati Manufacturing Company, and of the proceedings in a writ of error allowed thereon, from which it appeared that a summons issued in favor of the Miami Exporting Company against the Cincinnati Manufacturing Company, on the 7th, and was served on October 13, 1820, and that the judgment was confessed by Benham on the 12th of the same month, by virtue of a warrant of attorney for that purpose, executed by Davis and Wheeler, as trustees of the Cincinnati Manufacturing Company, with a release of error, and stay of execution for three months. Upon this judgment a *writ of error was allowed on September 27, 1825, and continued in the Supreme Court until May term, 1829, when the same was quashed, on the motion of the defendants in error.

Also, the record of the original judgment in favor of Davis, Findlay, and Wheeler, against the Cincinnati Manufacturing Company, and of the proceedings in a writ of error allowed thereon; from which it appeared that this judgment was confessed by Benham on the same day, and under the same circumstances, as the judgment in favor of the Miami Exporting Company, with the exception of a stay of execution. Upon this judgment a writ of error was allowed on April 21, 1825, which was discontinued by the plaintiff in error at May term, 1829.

Also, a bill in chancery, now pending in the common pleas of Hamilton county, filed by the Bank of the United States and William Lytle, against the Cincinnati Manufacturing Company, the Miami Exporting Company, Davis, Findlay, Wheeler, and Avery, setting forth the assignment of said mortgage, and of the judgment of Lytle and Avery, against the Cincinnati Manufacturing Company, to the bank; and also all the proceedings of the Miami Exporting Company, and of Davis, Findlay, and Wheeler, in relation to their respective judgments against the Cincinnati Manufacturing Company, and praying a sale of the mortgaged premises for the benefit of the judgment of Lytle and Avery, and an injunction against the Miami Exporting Company to restrain them from enforcing their judgment against the mortgaged premises.

Also, the answer of the Miami Exporting Company asserting their rights to a preference, by virtue of their prior judgment against the Cincinnati Manufacturing Company.

The order for the distribution of the moneys in controversy was made on November 16, 1829, the same day on which the land was sold.

No bonds were given upon the allowance of the writs of error upon the judgments against the Cincinnati Manufacturing Company.

The judgment of the Miami Exporting Company was revived on December 24, 1829.

*Upon this state of facts the court below ordered, that after [465 discharging the judgment of Hafer, the balance of said moneys should be applied to the discharge of the judgments of Davis, Findlay, and Wheeler against the Cincinnati Manufacturing Company, and the Miami Exporting Company against the Cincinnati Manufacturing Company, in preference to the judgment of Lytle and Avery against the Cincinnati Manufacturing Company; to which order the Bank of the United States, assignees of Lytle and Avery, excepted, and sued out this writ of *certiorari*.

CASWELL and STARR, for the plaintiffs in *certiorari*.

STORER and FOX, on the same side.

WORTHINGTON, contra.

By the COURT:

The assignees of Lytle and Avery, having purchased the real estate in controversy, upon an execution in their favor, regularly issued and levied, are entitled to retain the purchase money, and apply the same as a credit upon their judgment, unless some other subsisting, paramount claim is interposed.

The pretensions of the several applicants are to be considered.

*First.* It seems agreed by all parties that the judgment of Hafer is entitled to priority; and may, therefore, be laid out of the question.

*Second.* The judgment of the Miami Exporting Company, being older than the judgment of Lytle and Avery, is entitled to a preference over the latter, unless that preference has been lost by the

425

lapse of time, or laches of the party. It appears that the last execution issued by the Miami Exporting Company was on June 19, 1823, the sale upon which was set aside at the August term following. The judgment was revived on December 24, 1829, more than five years from the date of the last execution, and from the time 466] the sale thereon was set aside. The sale, which *produced the moneys in controversy, was made on November 16, 1829; and the motion to distribute the moneys was made and granted on the same day, and more than one month *before* the judgment of the Miama Exporting Company was revived. So far, therefore, as the Miami Exporting Company are concerned, the only question is, whether a senior judgment creditor, who has issued no execution for more than five years, is entitled to moneys made by a sale upon a junior judgment.

By the common law, a plaintiff could not have execution upon a judgment after a year and a day passed; but he was put to his action of debt upon the judgment. 2 Inst. 469; Co. Lit. 290–296. But by St. W. 2, 13 Ed. I. 45, he might have a *scire facias quare executionem non*, etc. If this statute was in force in this state, it is now abrogated by the statute, in which our legislature have undertaken to act upon the same subject matter; and they have, in effect, prevented the issuing of executions, either *fi. fa. et lev. fa.* or *vendi.*, by declaring that after the expiration of five years *it shall be lawful* to maintain an action of debt, or sue out a *scire facias* upon judgments, etc.

At common law, if a *fi. fa.* were issued within the year and day, and *nulla bona* returned; or an *elegit*, and no execution thereon, there might be another *fi. fa., elegit*, or *ca. sa.*, several years after, without *scire facias*, if continuance were entered from the first *fi. fa.* or *elegit.* 1 Inst. 230; 4 Inst. 271; Str. 100; 4 Com. Dig. 143. This principle of the common law was also abolished by our statute, which provides, that if five years intervene, after the date of one execution, before another is sued out, then debt or *scire facias* may be prosecuted, etc.

It is a well-settled rule, that an execution issued upon a dormant judgment, will be set aside on motion, and the goods or money levied, restored to the judgment debtor; and sometimes with costs. 2 Wils. 82; Tidd's Prac. 935; 3 Caine, 270; 2 Saund. 71–74. The reason of this rule is, that after the year and day, the law presumes the judgment satisfied; and it will not permit the judgment debtor

to be disturbed by an execution, without a *scire facias,* or other legal process.

*This rule of the common law, and its reason, apply with [467 equal, if not greater force, to cases under our statute, where five years elapsed and no execution issued; or where five years elapse after the date of an execution before another is sued out. But it is urged that the injunction obtained by the Cincinnati Manufacturing Company takes the case out of the operation of this rule.

It was formerly held, that if the plaintiff had been tied up by injunction for a year and day, he could not take out execution without a *scire facias.* 6 Mad. 288; 1 Str. 301; Bac. Ab., Exec. But this principle has been overruled, and it is now held, that he may afterward sue an execution without *scire facias.* 2 Burr. 600; 2 Saund. 72.

In the present case, however, the injunction was dissolved, and the bill dismissed in May, 1823; and more than five years having elapsed from that time, as well as from the date of the last execution, the party is in the same situation as if the injunction had never been allowed, or any execution issued.

It is also claimed, that the writ of error prosecuted in 1825, removes the necessity of suing out execution within five years from the date of the last execution.

If the defendant brings a writ of error, and the judgment is affirmed, the defendant in error may take out execution after the year, and without *scire facias;* because the writ of error was a *supersedeas* to the execution, and the defendant in error must wait until it be determined. 5 Rep. 88; Bac. Ab., Exec. 362; 2 Saund. 72.

But by the express provisions of our statute, vol. xxii. 70, no writ of error shall operate as a *supersedeas,* until bond and security are given. Notwithstanding the allowance of the writ of error, therefore, the Miami Exporting Company were at full liberty to sue out execution upon their judgment. No bond was executed, and of course there was no *supersedeas* to the execution.

Admitting, then, that the judgment of the Miami Exporting Company was originally valid, a point upon which we intimate no opinion, it was dormant, and no execution could have regularly issued upon it, at the time the order of appropriation was made in the court below. It necessarily follows that the moneys in *controversy can not be applied to discharge such a judg- [468

ment.  The law presumes it to have been paid ; and that presump-
tion must be rebutted by an action, or a *scire facias.*  Had an ex-
ecution issued on the judgment of the Miami Exporting Company
and the money made, the court, on motion, would set aside the ex-
ecution as irregular, and restore the money to the judgment
debtor.  It would be an anomaly in the administration of justice,
to apply money raised upon a junior judgment to the discharge of
a senior judgment, when, if the same money had been raised upon
the senior judgment itself, the court would set aside the execution
and award a restitution of the money.

3.  The claims of Davis and others, rest upon the same grounds
as those of the Miami Exporting Company with one exception.

On November 11, 1823, an execution was issued on the judg-
ment of Davis and others, upon which a sale of the real estate was
made by the sheriff, on December 15, 1823, which sale, with the
valuation, was set aside *by consent* on September 3, 1829.

Whatever may have been the rights of Davis and others, on
September 3, 1829, as to the sale upon their execution, they were
then lost by their voluntary appearance in court and consenting
that their own purchase should be set aside.  More than five years
had then elapsed since the date of their last execution, and they
were bound to know that they could issue no other execution with-
out *scire facias.*  The law presumes that the sale was set aside, be-
cause the debt had been paid or released ; and if such be not the
fact, the plaintiffs must attribute their loss, if any there be, to their
own acts.  It has been settled in this court, that if a levy be set
aside, the parties stand in the same situation as if no levy had
ever been made.  2 Ohio, 400.  We see no reason why this
principle should not be applied to a sale upon execution volun-
tarily set aside by the parties ; the execution upon which the sale
had been made was *functus officio ;* no subsequent steps could be
taken to enforce the collection of the judgment without a new
execution ; and no new execution could be sued out because more
than five years had elapsed since the date of the last execution.

The judgment of Davis and others, therefore, was entitled to no
share of the money in controversy.

469]   *It is unnecessary to settle the question, whether the judg-
ments of the Miami Exporting Company and of Davis and others
have lost their priority of lien upon the real estate, or whether
the purchaser under the judgment of Lytle and Avery holds the

lands, discharged of the prior incumbrance of those judgments. We are satisfied that the Miami Exporting Company and Davis and others, are not entitled to the moneys in controversy; and if they have any other rights, we leave them to be asserted in such manner and form as the parties may be advised.

Order reversed.