**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
***Toledo City School Dist. Bd. of Edn. v. State Bd. of Edn.,* Slip Opinion No. 2016-Ohio-2806.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-2806

TOLEDO CITY SCHOOL DISTRICT BOARD OF EDUCATION ET AL., APPELLEES, *v.*
STATE BOARD OF EDUCATION OF OHIO ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Toledo City School Dist. Bd. of Edn. v. State Bd. of Edn.,* Slip Opinion No. 2016-Ohio-2806.]**

*Constitutional law—Article II, Section 28 of the Ohio Constitution—School funding—Retroactivity clause does not protect political subdivisions—General Assembly has constitutional authority to adjust local school funding retrospectively.*

(No. 2014-1769—Submitted December 2, 2015—Decided May 4, 2016.)

APPEAL from the Court of Appeals for Franklin County,
Nos. 14AP-93, 14AP-94, and 14AP-95, 2014-Ohio-3741.

_____

**KENNEDY, J.**

{¶ 1} In this discretionary appeal from the Tenth District Court of Appeals, we consider whether the General Assembly has the constitutional authority to retroactively reduce the amount of state funding allocated to local school districts

and to immunize appellant State Board of Education of Ohio ("the department") against legal claims by school districts seeking reimbursement for retroactive reductions in school-foundation funding. The department advances the following proposition of law: "The General Assembly has constitutional authority to adjust local school funding retrospectively." We agree.

{¶ 2} For the reasons that follow, we conclude that the Retroactivity Clause, Article II, Section 28 of the Ohio Constitution, does not protect political subdivisions like appellees Toledo City School District Board of Education, Dayton City School District Board of Education, and Cleveland Metropolitan School District Board of Education ("the boards") that are created by the state to carry out the state's governmental functions. Therefore, we hold that the General Assembly has constitutional authority to adjust local school funding retrospectively. We reverse the judgment of the court of appeals and remand this matter to the trial court for further proceedings.

## I.  Facts and Procedural History

*A.  Public School District Funding for Fiscal Years 2005 through 2007*

{¶ 3} A school district's revenue is derived primarily from state and local funds, with federal funds playing a lesser role. State funding is determined and distributed through the School Foundation Program, R.C. Chapter 3317, which is administered by the department. R.C. 3317.01. One component used in the formula for calculating a school district's funding is the district's average daily membership ("formula ADM").

{¶ 4} For fiscal year 2005, a school district's formula ADM consisted of the total number of students actually receiving the district's educational services plus the total number of students who were entitled to attend school in the district but who received educational services elsewhere, including at community schools. Former R.C. 3317.03(A)(1) and (2), Am.Sub.H.B. No. 106, 150 Ohio Laws, Part III, 4254-4255. Each school district certified its formula ADM to the department

based on a one-time student count conducted in early October (the "October count"). Former R.C. 3317.03(A), Am.Sub.H.B. No. 106, 150 Ohio Laws, Part III, 4254.

{¶ 5} Enrollment changes that occurred outside of the October count did not increase or decrease a school district's funding, with one exception: students who attended community schools but who were not included in their district's October count were added to the formula ADM. Former R.C. 3317.03(F)(3), Am.Sub.H.B. No. 106, 150 Ohio Laws, Part III, 4262.

{¶ 6} While community-school students were included in school districts' October counts under former R.C. 3317.03(A)(2)(a), 150 Ohio Laws, Part III, 4255, the community schools' funding was not determined based upon those counts. Instead, that funding was based on the number of students in attendance at the community schools, which was submitted monthly to the department in an enrollment report known as the Community School Average Daily Membership ("CSADM"). *Cincinnati City School Dist. Bd. of Edn. v. State Bd. of Edn.*, 176 Ohio App.3d 157, 2008-Ohio-1434, 891 N.E.2d 352, ¶ 7 (1st Dist.). Based upon the CSADM report, the funds attributable to a student enrolled at a community school were deducted from the student's school district's school-foundation funds and paid to the community school that reported the student in its CSADM. Former R.C. 3314.08(C), Am.Sub.H.B. No. 95, 150 Ohio Laws, Part I, 1117-1118.

B.     *Department Adjusts Funding for Fiscal Years 2005 through 2007*

{¶ 7} During fiscal year 2005, the department noticed that the number of community-school students reported in some districts' October counts was greater than the number reported in the CSADMs. Believing the CSADMs to be more accurate, the department recalculated those school districts' school-foundation funding for that fiscal year. The boards respectively allege that the department determined the October counts were too high by the following numbers of students: Toledo, 561 students; Dayton, 688 students; and Cleveland, 575 students.

**{¶ 8}** This recalculation resulted in the department's determination that the boards had been overpaid for fiscal year 2005. The department recouped the overpayment by deducting the overpaid amounts from the boards' school-foundation funding during fiscal years 2005, 2006, and 2007. The boards allege that the department reduced funding during these years by the following amounts: Toledo, $3,576,948; Dayton, $2,548,120; and Cleveland, $1,857,311.

C. *Cincinnati Board of Education Litigation*

**{¶ 9}** In 2007, the Cincinnati School District sued the department over its fiscal-year-2005 adjustment of Cincinnati's school-foundation funding. *Cincinnati City School Dist. Bd. of Edn.*, 176 Ohio App.3d 157, 2008-Ohio-1434, 891 N.E.2d 352. The trial court determined that Ohio law mandated that the formula ADM from the October count be used to calculate school-foundation funding—not the monthly CSADM data from the community schools. *Id*. at ¶ 2. The First District Court of Appeals affirmed. *Id*.

**{¶ 10}** The department appealed to this court and we accepted review. 119 Ohio St.3d 1443, 2008-Ohio-4487, 893 N.E.2d 515. The action, however, was dismissed before briefing because the parties reached a settlement. 119 Ohio St.3d 1498, 2008-Ohio-5500, 895 N.E.2d 562.

D. *General Assembly Amends Statute*

**{¶ 11}** During the pendency of the *Cincinnati* litigation, the General Assembly amended R.C. 3317.03 to authorize the department to adjust formula ADM if an error was discovered. Former R.C. 3317.03(K), 2007 Am.Sub.H.B. No. 119. Additionally, in the 2009 biennial budget bill, the General Assembly immunized the department from liability for any legal claim for reimbursement brought by a school district for the reduction of school-foundation funding for fiscal years 2005, 2006, or 2007 ("budget provision"). *See* 2009 Am.Sub.H.B. No. 1, Section 265.60.70.

*E.    Toledo, Cleveland, and Dayton Litigation*

{¶ 12} In 2011, four years after the last reduction in funding resulting from the 2005 adjustment of their formula ADMs, the boards filed complaints seeking an order that the department had to pay their respective funds for fiscal years 2005 through 2007 using only the formula ADMs from the October counts and not from the CSADMs. The boards also sought equitable restitution for funds they claimed that the department had wrongfully withheld. Parents of some children in the school districts joined the suits but did not allege separate claims. The three cases were transferred to the Franklin County Court of Common Pleas and consolidated.

{¶ 13} The department moved for judgment on the pleadings, arguing in part that the budget provision barred the boards' claims and insulated the department from liability. The trial court held that the budget provision's elimination of potential state liability was unconstitutionally retroactive. The Tenth District Court of Appeals affirmed. 2014-Ohio-3741, 18 N.E.3d 505. It held that the budget provision was unconstitutionally retroactive because it impaired the boards' "substantive right to School Foundation funds that accrued under the statutory law in place for FY 2005 through FY 2007." *Id*. at ¶ 42.

## II. Law and Analysis

*A.    Positions of the Parties*

{¶ 14} The department argues that the Retroactivity Clause protects private parties, not arms of the state, and that therefore, the boards' claims that the budget provisions are unconstitutionally retroactive fails. The department sets forth numerous bases for its position. First, when the 1851 Constitution was adopted, the settled meaning of "retroactive laws" did not reach laws affecting government entities, and debate during the 1850-1851 constitutional convention reveals the intention to incorporate the settled meaning into the Constitution. Second, the Ohio Constitution's structure reinforces the conclusion that the phrase "retroactive laws" does not apply to laws affecting the state's political arms. Third, decisions of this

court after the Constitution's ratification hold that the Retroactivity Clause does not prohibit retroactive laws negatively affecting state subdivisions. Lastly, the department argues that the Tenth District relied upon cases that did not squarely address this issue.

{¶ 15} In response, the boards argue that the Retroactivity Clause is absolute in its prohibition and, as such, there is no reason to engage in historical analysis. Nevertheless, if historical context is considered, they argue, the intention of the framers was for the clause to protect all parties, not just private ones. The boards posit that the framers' discussion regarding the prohibition of retroactive laws was discussed as an all-or-nothing proposition. They also contend that this court has afforded political subdivisions the protections of the Retroactivity Clause.

B.      *Constitutionality; General Considerations*

{¶ 16} Generally speaking, in construing the Constitution, we apply the same rules of construction that we apply in construing statutes. *Miami Cty. v. Dayton*, 92 Ohio St. 215, 223, 110 N.E. 726 (1915). Therefore, the intent of the framers is controlling. *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 14. To determine intent, we must begin by looking at the language of the provision itself. *State ex rel. Maurer v. Sheward*, 71 Ohio St.3d 513, 520, 644 N.E.2d 369 (1994). "Where the meaning of a provision is clear on its face, we will not look beyond the provision in an attempt to divine what the drafters intended it to mean." *Id*. at 520-521. Words used in the Constitution that are not defined therein must be taken in their usual, normal, or customary meaning. *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 584, 651 N.E.2d 995 (1995); *see also* R.C. 1.42. If the meaning of a provision cannot be ascertained by its plain language, a court may look to the purpose of the provision to determine its meaning. *See Castleberry v. Evatt*, 147 Ohio St. 30, 67 N.E.2d 861 (1946), paragraph one of the syllabus.

C.      *Retroactivity Clause*

{¶ 17} The Retroactively Clause of the Ohio Constitution, Article II, Section 28, remains unchanged from its adoption in 1851:

> The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state.

{¶ 18} The literal meaning of the clause is that the legislature is absolutely prohibited from passing any law that is " 'made to affect acts or facts occurring, or rights accruing, before it come into force.' " *Bielat v. Bielat*, 87 Ohio St.3d 350, 353, 721 N.E.2d 28 (2000), quoting *Black's Law Dictionary* 1317 (6th Ed.1990). This court, however, has recognized that "retroactivity itself is not always forbidden by Ohio law." *Id.* Instead, "there is a crucial distinction between statues that merely apply retroactively * * * and those that do so in a manner that offends our Constitution." *Id.*, citing *Rairden v. Holden*, 15 Ohio St. 207, 210-211 (1864), and *State v. Cook*, 83 Ohio St.3d 404, 410, 700 N.E.2d 570 (1998). Accordingly, we must look to the purpose of the Retroactivity Clause to determine whether the statute at issue offends it.

D.      *Meaning of Retroactivity in 1851*

{¶ 19} We begin by examining whether "retroactive laws" was a term of art with an established meaning at the time of the ratification of the 1851 Constitution. *Compare Collins v. Youngblood*, 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) ("*ex post facto* law" was a term of art with an established meaning at the

time of the framing of the United States Constitution). If so, the meaning may have been incorporated from common law, *see Richardson v. Doe*, 176 Ohio St. 370, 372-373, 199 N.E.2d 878 (1964) (discussing the origin of the term "malpractice" and noting that "where a statute uses a word which has a definite meaning at common law, it will be presumed to be used in that sense"), or from other state constitutions or laws at the time, *see State ex rel. Durbin v. Smith*, 102 Ohio St. 591, 599, 133 N.E. 457 (1921) (noting that the debates at the Ohio constitutional convention show that Ohio's referendum provision was copied from the Oregon Constitution and that a decision of the Oregon Supreme Court regarding that provision was considered at the convention).

*1.    Other States' Constitutions*

{¶ 20} Prior to 1851, New Hampshire, Missouri, Tennessee, and Texas had adopted constitutional provisions prohibiting retroactive laws. *See* New Hampshire Constitution, Part 1, Article 23 (1784); Missouri Constitution, Article XIII, Section 17 (1820); Tennessee Constitution, Article 1, Section 20 (1834); Texas Constitution, Article 1, Section 14 (1845). By 1851, the supreme courts of both New Hampshire and Texas had had the opportunity to construe the meaning of their respective provisions. *See Merrill v. Sherburne*, 1 N.H. 199, 212-213 (1818); *DeCordova v. Galveston*, 4 Tex. 470, 479 (1849). The *Merrill* court, in concluding that an act was unconstitutionally retroactive, stressed that only those retrospective acts that "operate on the interests of individuals or of *private* corporations" violate the constitution, explaining that "all public[] officers impliedly consent to alterations of the institutions in which they officiate, provided the public[] deem it expedient to introduce a change." (Emphasis sic.) *Merrill* at 213, 217. The *DeCordova* court noted *Merrill*'s statement about individuals and private corporations and found that *Merrill* "illustrate[d] the intention of the [Texas] convention in imposing the restriction." *DeCordova* at 479.

8

### 2.  *Established Common-Law Principles*

**{¶ 21}** At the time of the Ohio constitutional convention, it was an established principle that an act was not unconstitutionally retroactive "unless [it] impair[ed] rights which are *vested:*  because most civil rights are derived from public[] laws; and if, before the rights become vested in particular individuals, the convenience of the state produces amendments or repeals of those law, those individual have no cause of complaint."  (Emphasis sic.)  *Merrill* at 213-214; *see also DeCordova* at 470, 479-80 (law was unconstitutionally retrospective if it "destroy[ed] or impair[ed] vested rights or rights to do certain actions or possess certain things"); *Proprietors of Kennebec Purchase v. Laboree*, 2 Me. 275, 295 (1823) (finding a law unconstitutionally retroactive "because *such* operation would impair and destroy *vested rights*" [emphasis sic]).

**{¶ 22}** By 1851, it was understood that both individuals and private corporations could acquire vested rights.  The Supreme Court of the United States had held that the charter founding a college that was a private corporation was a contract between the government and the corporation and that the legislature could not repeal, impair, or alter the rights and privileges conferred by the charter. *Trustees of Dartmouth College v. Woodward*, 17 U.S. 518, 643-644, 650-654, 4 L.Ed. 629 (1819).

**{¶ 23}** This court had, however, concluded that public corporations did not enjoy vested rights:

> [A] public corporation, created for the purposes of government, can not be considered as a contract. * * * "In respect to public corporations, which exist only for public purposes, as counties, cities, and towns, the legislature, under proper limitations, have a right to change, modify, enlarge, or restrain them, securing,

however, the property, for the uses of those for whom it was purchased."

*Marietta v. Fearing*, 4 Ohio 427, 432 (1831), quoting 2 Kent's Commentaries on American Law (1st Ed.1827) 245.

{¶ 24} The supreme courts of Louisiana and Indiana had espoused the same principle. The Louisiana court had stated:

> The questions as to the violation of contracts or vested rights under the Constitution of the United States, or of the State, does not arise. Those questions grow entirely out of the violation of contracts with, or the vested rights of individuals or private corporations established for individual profit.
>
> The corporation of a town is established for public purposes alone, and to administer a part of the sovereign power of the State over a small portion of its territory. It is created by the Legislature and is entirely subject to Legislative will.

*Police Jury of Bossier v. Corp. of Shreveport*, 5 La.Ann. 661, 665 (1850). The Indiana court had stated:

> The special powers conferred upon [public or municipal corporations] are not vested rights as against the State, but being wholly political exist only during the will of the general Legislature * * *. Such powers may at any time be repealed or abrogated by the Legislature, either by a general law operating upon the whole State, or by a special act altering the powers of the corporation.

*Sloan v. State*, 8 Blackf. 361, 364 (Ind.1847).

{¶ 25} Around this time, the Supreme Court of the United States also recognized that public corporations did not enjoy the same protections as individuals and private corporations:

> [the legislature] had unquestionably the power to change its policy, and allow the company to pursue a different course, and to release it from its obligations both as to the direction of the road and the payment of the money. For, in doing this, it was dealing altogether with matters of public concern, and interfered with no private right; for neither the commissioners, nor the county, nor any one of its citizens, had acquired any separate or private interests which could be maintained in a court of justice.

*Maryland v. Baltimore & Ohio RR. Co.*, 44 U.S. 534, 549-50, 11 L.Ed. 714 (1845) (upholding a state legislature's ability to revoke a previous grant of funds to a county, because it had been made for public, not private, purposes and to a public body).

{¶ 26} Accordingly, at the time of the 1850-1851 constitutional convention, two key principles were established. First, unconstitutional retroactive acts were those that operated on the vested rights of individuals or of private corporations. Second, political subdivisions as creatures of the state did not have vested rights.

E.     *Debates of the 1850-1851 Constitutional Convention of Ohio*

{¶ 27} We have previously noted the function of the proceedings of the constitutional convention in revealing the intent of a provision in the Constitution. " '[D]ebates of the convention * * * may fortify [the court] in following the natural import of [the provision's] language, and legitimately aid in removing doubts.' " *Steele, Hopkins & Meredith Co. v. Miller*, 92 Ohio St. 115, 122, 110 N.E. 648

(1915), quoting *Cass v. Dillon*, 2 Ohio St. 607, 621 (1853). An examination of the debates from the 1850-1851 constitutional convention confirms that the intent of the framers was to incorporate the aforementioned principles regarding "retroactive laws" into Article II, Section 28.

{¶ 28} The debate regarding the retroactivity provision reveals that delegates to the convention saw a need to provide private individuals with certainty in the law. One delegate expressed his approval of the provision as it "settles forever and conclusively one or two questions of controversy, which exist in this State and leave the law in a most distressing uncertainty. It matters not whether it is right or wrong—it has left the law in uncertainty and the rights of individuals dependent upon the opinions of the Supreme Court." 1 Report of the Debates and Proceedings of the Convention for the Revision of the Constitution of the State of Ohio, 1850-1851 ("Debates") 268. The delegate also expressed his belief "in the principle that men's rights are to be settled by the law in force at the time they accrued." *Id*. at 270.

{¶ 29} Similarly, another delegate expressed that

> it is indispensably necessary that the exercise of [the] power [to prescribe the rules of civil action] should only look ahead, that it should be only prospective in its operation, for the idea of making a rule to punish the action of men, or to affect their rights and interests, already past and accrued, would be as bad as the practice of the Roman despot, when he wrote his laws in small characters, and stuck them up so high that the people could not read them.

2 Debates 591.

{¶ 30} The debate concerning the legislature's ability to enact "curative" laws was also centered on individuals. One delegate "intended merely to call

12

attention to the difficulty that might arise out of the adoption of this section; and which might go far to affect the rights of a citizen." 1 Debates 265. Other delegates stressed the desire to protect the legislature's ability to pass curative laws as "they are laws of peace and affording security to the rights of the citizen," *id.* at 274, and they "may be used for the protection of private rights—for the purpose of curing those evils which sometimes arise in society, and which, if not cured, would work immense mischief and wrong," 2 Debates 240.

{¶ 31} The delegation was also cognizant of the New Hampshire Constitution's retroactivity provision and its interpretation by the *Merrill* court. A delegate in favor of adopting the retroactivity provision stated:

> the New Hampshire constitution contains a prohibition against retro-spective, or, as called here, retro-active laws[.] The[s]e two are equiv[a]lent terms. It * * * precludes [the legislature] from in terfering [sic] with any right already vested; from making any law which, instead of looking to the future, interferes with the rights of persons and property which are already vested. If gentlemen will look [at *Merrill*] they will find an opinion * * * which * * * discusses the whole subject of retro-active legislation, and the effect of this term retrospective.

1 Debates 269.

{¶ 32} There was also an acknowledgment of the distinction that had developed in case law between private and public corporations. Referencing *Trustees of Dartmouth College*, 17 U.S. 518, 4 L.Ed. 629, and this court's decision in *Fearing*, 4 Ohio 427, one delegate stated that unlike private corporations, municipal corporations "were always liable to repeal." 2 Debates 270.

**{¶ 33}** Accordingly, when Article II, Section 28 was adopted in 1851, the delegates knew that similar provisions in other state constitutions had been interpreted to "operate on the interests of individuals or of *private* corporations." *Merrill*, 1 N.H. at 212-213. They also comprehended that a legislative enactment had to impair the vested rights of individuals or private corporations to be unconstitutionally retroactive.

*F.    Decisions after Adoption of Retroactively Provision*

**{¶ 34}** This court's precedent in the years following the enactment of Article II, Section 28 provides further support for finding that the Retroactivity Clause applies to private citizens and corporations but not to political subdivisions. We have rejected retroactivity challenges to legislation that sought to impose a new duty and/or create a new obligation upon political subdivisions, consistently finding that the state is able to injuriously affect its own rights.

**{¶ 35}** A retroactivity challenge was asserted to legislation that imposed a new obligation upon cities to pay bounties to Civil War veterans who had reenlisted and to whom, at the time of reenlistment, the city had not made any promise or pledge to pay a bounty. *State ex rel. Bates v. Richland Twp. Trustees*, 20 Ohio St. 362 (1870). We found that the legislature had not "transcended their constitutional authority" because "counties, townships, and cities are public agencies in the system of the State government; and, in the class of laws now under consideration, they are employed by the legislature as mere instrumentalities to raise a tax for a public object, and to effect its equitable distribution among those for whom it was intended." *Id*. at 371.

**{¶ 36}** In examining the effect that a legislative amendment had on the payment of unused vacation time upon a state employee's retirement, we noted that a "statute which impairs only the rights of the state may constitutionally be given retroactive effect." *State ex rel. Sweeney v. Donahue*, 12 Ohio St.2d 84, 87, 232 N.E.2d 398 (1967), citing *State ex rel. Dept. of Mental Hygiene & Correction v.*

14

*Eichenberg*, 2 Ohio App.2d 274, 207 N.E.2d 790 (9th Dist.1965) ("This law cannot be deemed to be a retroactive law for it does not injuriously affect a citizen or interfere with a citizen's vested right"). Similarly, a challenge to a statute that retroactively relieved a public official and his sureties of liability for lost or stolen funds was without merit because "the legislature undoubtedly has authority to release obligations which could only be * * * prosecuted [in the name of the state]." *Bd. of Edn. v. McLandsborough*, 36 Ohio St. 227, 232 (1880).

{¶ 37} This court also examined a retroactivity challenge to legislation that validated previously ratified municipal ordinances authorizing contractors to lay pipes to supply the public with steam heat and power. The legislation was found to be valid because Article II, Section 28 " 'does not apply to legislation recognizing or affirming the binding obligation of the state, or any of its subordinate agencies, with respect to past transactions,' " but instead " 'is designed to prevent retrospective legislation injuriously affecting individuals, and thus protect vested rights from invasion.' " *Kumler v. Silsbee*, 38 Ohio St. 445 (1882), quoting *New Orleans v. Clark*, 95 U.S. 644, 655, 24 L.Ed. 521 (1877).

{¶ 38} In contrast to the foregoing, there is a body of cases that appears to support a finding that political subdivisions are entitled to the protection granted under Article II, Section 28. This court has found legislative acts that have imposed new obligations on state subdivisions to be unconstitutionally retroactive. *See Hamilton Cty. Commrs. v. Rosche*, 50 Ohio St. 103, 33 N.E. 408 (1893), paragraph one of the syllabus (law requiring county to refund taxes that had already been paid); *State ex rel. Crotty v. Zangerle*, 133 Ohio St. 532, 534-535, 14 N.E.2d 932 (1938) (law requiring county to refund tax penalties that had already been paid); *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 91 Ohio St.3d 308, 316-317, 744 N.E.2d 751 (2001) (law allowing parties to correct errors in valuation complaints, which would impose new burdens on county officials to defend previously dismissed claims).

{¶ 39} Upon close examination, however, these cases are all silent on the threshold issue; that is, whether political subdivisions have rights under Article II, Section 28. Instead, in each case, there is an assumption that the protection afforded by the Retroactivity Clause is available to political subdivisions and the analysis is solely devoted to whether the law in question is retroactive. Accordingly, these cases lack precedential value and we are not bound by them. *See State ex rel. United Auto., Aerospace & Agricultural Implement Workers of Am. v. Bur. of Workers' Comp.*, 108 Ohio St.3d 432, 2006-Ohio-1327, 844 N.E.2d 335, ¶ 46 (" ' "when questions of jurisdiction have been passed on in prior decisions *sub silentio*, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us" ' "), quoting *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 837 (6th Cir.2001), quoting *Hagans v. Lavine*, 415 U.S. 528, 535, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), fn. 5.

{¶ 40} Our decision in *Avon Lake City School Dist. v. Limbach*, 35 Ohio St.3d 118, 518 N.E.2d 1190 (1988), provides strong support for determining that political subdivisions do not have rights under Article II, Section 28. In that case, two school districts challenged the tax commissioner's valuation of personal property of public utility companies. The Board of Tax Appeals dismissed the appeals, ruling that the school districts did not have standing to file an appeal. We were presented with the issue whether the dismissals by the Board of Tax Appeals deprived the school districts of their right to due process of law. We reviewed cases that "conclude[d] that a political subdivision may not invoke the protection provided by the Constitution against its own state and is prevented from attacking the constitutionality of state legislation on the grounds that its own rights had been impaired." *Id*. at 121-122. "[P]ersuaded that a school district is a political subdivision created by the General Assembly and that it may not assert any constitutional protections regarding due course of law or due process of law against the state, its creator," we concluded that the school districts could not "assert these

protections against the state by asking [us] to declare the statute unconstitutional for these reasons." *Id*. at 122.

{¶ 41} Accordingly, we have recognized that political subdivisions are not entitled to all protections afforded by the Constitution. Additionally, our precedent in the years following the enactment of Article II, Section 28 provides strong support for concluding that the Retroactivity Clause does not apply to political subdivisions.

G.    *Decisions by Sister Supreme Courts*

{¶ 42} A number of our sister supreme courts have examined whether the prohibition on retroactive laws extends to political subdivisions; their opinions provide additional guidance. The supreme courts of New Hampshire and Texas have both reaffirmed their previous holdings. *See Nottingham v. Harvey*, 120 N.H. 889, 898, 424 A.2d 1125 (1980) (a town "is a mere political subdivision of the State over which the legislature may exercise complete control"); *Deacon v. Euless*, 405 S.W.2d 59, 62 (Tex.1966) ("Municipal Corporations do not acquire vested rights against the State"). The supreme courts of Massachusetts, Idaho, and Tennessee have concluded similarly. *See Greenaway's Case*, 319 Mass. 121, 123, 65 N.E.2d 16 (1946) (no constitutional challenge can succeed where a state enacts retroactive legislation impairing its own rights); *Garden City v. Boise*, 104 Idaho 512, 515, 660 P.2d 1355 (1983) (legislature has absolute power to change, modify, or destroy at its discretion the powers granted to a municipal corporation); *State ex rel. Meyer v. Cobb*, 467 S.W.2d 854, 856 (Mo.1971) (retroactivity provision is for the protection of the citizen and not the state, and the state may retroactively impose new liabilities on itself or its governmental subdivisions). The United State Supreme Court has also reached the same conclusion with respect to Louisiana's constitution. *New Orleans v. Clark*, 95 U.S. at 655, 24 L.Ed. 521 (prohibition against retroactivity is to prevent injuriously affecting individuals; it does not apply to recognizing or

affirming a binding obligation of the state or its subordinate agencies with respect to past transactions).

{¶ 43} A Missouri case is particularly instructive due to its similarities to the case now before us. *See Savannah R-III School Dist. v. Pub. School Retirement Sys. of Missouri*, 950 S.W.2d 854 (Mo.1997). In that case, the Missouri Public Employees Retirement System had notified school districts that the value of health-insurance premiums provided to teachers was to be included as salary for the purpose of calculating the teachers' contribution amount. Years later, some districts filed a class-action lawsuit seeking a refund of the overpayment, as the legislative definition of salary did not include health-insurance premiums. While the action was pending, the Missouri legislature amended the statute so that the definition of salary included health-insurance premiums. The legislation also stated that any contributions made before the effective date of the amendment were deemed to have been in compliance with the statute.

{¶ 44} The school districts argued that the amendment was unconstitutionally retroactive. The court rejected the challenge, noting that the prohibition's purpose was to protect citizens, not the state. The court's statement regarding school districts is particularly germane:

> "School districts are bodies corporate, instrumentalities of the state established by statute to facilitate effectual discharge of the General Assembly's constitutional mandate to establish and maintain free public schools * * *." *State ex rel. Independence Sch. Dist. v. Jones*, 653 S.W.2d 178, 185 (Mo. banc 1983) (quotation omitted). As "creatures of the legislature," the rights and responsibilities of school districts are created and governed by the legislature. *Id.* Hence, the legislature may waive or impair the vested rights of school districts without violating the retrospective law prohibition.

18

*Dye v. School Dist. No. 32*, 355 Mo. 231, 195 S.W.2d 874, 879 (banc 1946).

*Savannah R-III School Dist.*, 950 S.W.2d at 858.

### III. Conclusion

{¶ 45} The avenues examined all converge at the conclusion that political subdivisions are not entitled to the protection of Article II, Section 28. Prior to the 1850-1851 constitutional convention, the law that had developed in the country was that retroactivity provisions protected the vested rights of individuals and private corporations and that public corporations did not have vested rights. The debates from the convention reveal that the delegates understood this to be the scope of the protection provided by the retroactivity provision. Our early cases reflect this understanding. Finally, the weight of the authority from our sister supreme courts points toward the same conclusion.

{¶ 46} Accordingly, we hold that the Retroactivity Clause, Article II, Section 28 of the Ohio Constitution, does not protect political subdivisions, like school districts, that are created by the state to carry out its governmental functions. Therefore, the legislature was able to authorize the department to adjust local school funding calculations and to retroactively immunize the department from liability for any legal claim of reimbursement by a school district for a reduction of school-foundation funding, without violating the Retroactivity Clause. We reverse the judgment of the Tenth District and remand the matter to the trial court for consideration of the issues not addressed in its decision on the department's motion for judgment on the pleadings.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and O'DONNELL and FRENCH, JJ., concur.

PFEIFER, J., concurs in judgment with an opinion.

O'NEILL, J., dissents with an opinion that LANZINGER, J., joins.

_____

**PFEIFER, J., concurring.**

{¶ 47} I concur in the judgment of the majority but not in the reasoning behind that judgment. As Justice O'Neill states in his dissent, Article II, Section 28 of the Ohio Constitution provides "a restraint on the power of the General Assembly." Dissenting opinion at ¶ 56. That restraint is a clearly stated, absolute prohibition without limitation. We need not go outside the text of the Ohio Constitution to search for meaning. "Where there is no doubt, no ambiguity, no uncertainty as to the meaning of the language employed by the Constitution makers, there is clearly neither right nor authority for the court to assume to interpret that which needs no interpretation and to construe that which needs no construction." *State v. Rose*, 89 Ohio St. 383, 387, 106 N.E. 50 (1914).

{¶ 48} Political subdivisions may successfully sue the state based on violations of the Retroactivity Clause. *See, e.g.*, *Hamilton Cty. Commrs. v. Rosche*, 50 Ohio St. 103, 112-113, 33 N.E. 408 (1893); *see also State ex rel. Crotty v. Zangerle*, 133 Ohio St. 532, 534-535, 14 N.E.2d 932 (1938).

{¶ 49} In a recent case, *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 91 Ohio St.3d 308, 744 N.E.2d 751, this court held that an amendment to R.C. 5715.19 that allowed taxpayers to refile previously dismissed challenges to real-property-valuation assessments before county boards of revision "violate[d] Section 28, Article II of the Ohio Constitution, which prohibits the enactment of retroactive legislation." *Id.* at paragraph two if the syllabus. This court had held in *Sharon Village Ltd. v. Licking Cty. Bd. of Revision*, 78 Ohio St.3d 479, 678 N.E.2d 932 (1997), that a valuation complaint filed on behalf of a corporation by a nonattorney was invalid, affirming the board of revision's dismissal of the corporation's valuation complaint for lack of jurisdiction. *Cincinnati* at 310. The General Assembly, through passage of Sub.H.B. No. 694,

set out to ease the effect of that decision. Among other things, that bill created an exception to the general statutory rule that a real-property taxpayer is, in the absence of a showing of a change in circumstances, prohibited from filing successive valuation complaints in the same three-year period. *Id.* The amendment essentially allowed taxpayers adversely affected by the *Sharon Village* decision a "do-over" to refile their complaint, exempting them from the three-year rule.

{¶ 50} This court held that the General Assembly could relax the three-year rule but could not do so retroactively because of the effect of a retroactive application on political subdivisions:

> The county officials who opposed reduction in assessed valuations when the first complaints were dismissed could have concluded that those dismissals, followed by exhaustion of judicial review, ended the valuation proceedings and established the value of the property for the triennium period, thereby creating a "reasonable expectation of finality." Cf. *State ex rel. Matz v. Brown* (1988), 37 Ohio St.3d 279, 281, 525 N.E.2d 805, 808. But Sub.H.B. No. 694 imposes on those officials a burden to again defend the value determined by the auditor and, potentially, to refund taxes if the complainant is successful. Under *Bielat* [*v. Bielat*, 87 Ohio St.3d 350, 721 N.E.2d 28 (2000),] and *Crotty,* Sub.H.B. No. 694 is unconstitutionally retroactive because it creates a new right while, at the same time, imposing a new burden on parties who had appeared in opposition to the merits of once-dismissed valuation complaints or countercomplaints.

*Id.* at 316-317.

**{¶ 51}** Despite the fact that this court held in *Cincinnati* that Sub.H.B. No. 694 was unconstitutionally retroactive, the majority states that the holding "lack[s] precedential value" because it employs "an assumption that the protection afforded by the Retroactivity Clause is available to political subdivisions, and the analysis is solely devoted to whether the law in question is retroactive." Majority opinion at ¶ 39. How could this court find in *Cincinnati* that Sub.H.B. No. 694 was unconstitutionally retroactive because it imposed a new burden on political subdivisions without the implicit holding that the protection provided by Article II, Section 28 is available to political subdivisions? Certainly, nothing in the plain language of the Ohio Constitution would have suggested otherwise to the court in *Cincinnati*. Further, none of this court's precedents cited by the majority comes close to establishing a categorical denial of the protections of the Retroactivity Clause for political subdivisions.

**{¶ 52}** Nonetheless, I would hold that the Retroactivity Clause does not apply in this case. The school districts in this case had no vested right or reasonable expectation of finality in the Ohio Department of Education's treatment of funds that were as yet undistributed. The ODE was not powerless to dispute enrollment figures submitted by the districts and to adjust the funds to be distributed.

**{¶ 53}** The nuclear option imposed by the majority is not necessary to reach a conclusion in favor of the state in this case. We need only determine whether the particular measures passed by the General Assembly "impair[ed] vested rights, affect[ed] an accrued substantive right, or impose[d] new or additional burdens, duties, obligations or liabilities as to a past transaction." *Bielat*, 87 Ohio St.3d at 354, 721 N.E.2d 28. Instead, the majority eliminates even the possibility that the General Assembly could ever pass legislation that is unconstitutionally retroactive as to political subdivisions. The majority thus removes an important check on the power of the General Assembly. This court—not our Constitution—has given the

clear green light to the General Assembly to assert a power it had no reason to believe it had until today.

_____

**O'NEILL, J., dissenting.**

{¶ 54} Respectfully, I must dissent. I would hold that the uncodified language in the 2009 budget bill that extinguished the public school districts' cause of action against the Ohio Department of Education ("ODE") violates the constitutional prohibition on the passage of retroactive laws.

{¶ 55} The Retroactivity Clause, Article II, Section 28 of the Ohio Constitution, provides:

> The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state.

{¶ 56} The majority's conclusion that the Retroactivity Clause does not protect school districts created by the state ignores the plain language of the provision itself. The plain language of the Retroactivity Clause does not confer protection upon anyone. Article II, Section 28 of the Ohio Constitution is instead a restraint on the power of the General Assembly. It prohibits the legislature from passing laws that are retroactive. It really is that simple.

{¶ 57} In our system of government, the people possess all governmental power. In the constitutional distribution of power, the three branches of government have areas of overlapping power but none of the three branches is

subordinate. *Johnson v. Taulbee*, 66 Ohio St.2d 417, 422, 423 N.E.2d 80 (1981), citing *Hale v. State*, 55 Ohio St. 210, 213-214, 45 N.E. 199 (1896). The legislative branch decides what the law will be, the executive branch applies the law, and the judiciary interprets the law. As we explained in *Bartlett v. State*, the General Assembly "cannot annul, reverse, or modify a judgment of a court already rendered, nor require the courts to treat as valid laws those which are unconstitutional. If this could be permitted, the whole power of the government would at once become absorbed and taken into itself by the Legislature." 73 Ohio St. 54, 58, 75 N.E. 939 (1905).

**{¶ 58}** As the Tenth District pointed out, this court has established the analysis required to determine whether the retroactive application of a statute violates the Retroactivity Clause. 2014-Ohio-3741, 18 N.E.3d 505, ¶ 26, citing *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, 972 N.E.2d 534, ¶ 27. The first step is to determine whether the law was intended to apply retroactively. *White* at ¶ 27. The second step is to determine whether the statute is remedial or substantive. *Id.* And if the statute is substantive, retroactive application of the statute is forbidden. *Id.*

**{¶ 59}** In *White*, this court reiterated that if a statute affects an accrued substantive right, the statute is substantive. *Id.* at ¶ 34. Again, we need look no further than one of this court's own decisions. In *State ex rel. Kenton City School Dist. Bd. of Edn. v. State Bd. of Edn.*, 174 Ohio St. 257, 260-262, 189 N.E.2d 72 (1963), this court determined that the school-funding statute at issue in that case, R.C. 3317.02, created a right that was not affected by the subsequent amendment of the statute. Accordingly, the district was entitled to the school-funding formula guaranteed by the statute. And most importantly, the district was entitled to enforce the statutory formula by a writ of mandamus. *Id.* at 262-263.

**{¶ 60}** As this court thoroughly and eloquently explained in *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, protecting the borders

separating the three branches of government preserves the integrity and harmony of the government as a whole. *Id*. at ¶ 42-49. Despite the challenge of navigating the boundaries between interdependence and independence of the three branches, we must be vigilant against provisions of law that impermissibly threaten the integrity of the judiciary. *Id*. at ¶ 50-53.

{¶ 61} The simple fact is that for fiscal years 2005 through 2007, the validly enacted ADM formula provided the sole means for ODE to distribute funds to public schools. Unlike current law, the law in effect for fiscal years 2005 through 2007 provided no departmental discretion to modify the statutory formula, yet that is what the department did. There is nothing any of the three branches of government can do to change what the law was at the time these funds were wrongfully withheld from public schools. It is the role of the judiciary to interpret the law and to order the state to comply with the law. The uncodified language at issue here works to legislatively extinguish the public schools' causes of action under the validly enacted statutory school-funding formula. In so doing, the General Assembly has retroactively eliminated a substantive right and impermissibly encroached upon the role of the judiciary.

{¶ 62} This is not an action for punitive damages or an action to otherwise feather the nests of the districts. This action seeking a writ of mandamus and equitable restitution is a means for the public school districts to recover public dollars. Mandamus is one of the means by which courts force governmental actors to comply with the law.

{¶ 63} The framers of the Ohio Constitution were absolutely clear about who the Retroactivity Clause applies to. It applies to the legislature. Clearly, the Ohio legislature has the constitutional authority to adjust school-funding statutes prospectively. However, it is the province of the courts to interpret and apply the law as enacted. It is beyond dispute that the legislature is without the constitutional authority to retroactively "adjust" the school-funding statutes in order to extinguish

a public school district's substantive ability to enforce a validly enacted statute. I dissent.

LANZINGER, J., concurs in the foregoing opinion.

_____

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, Hannah C. Wilson, Deputy Solicitor, and Todd R. Marti, Assistant Attorney General, for appellants.

Bricker & Eckler, L.L.P., Nicholas A. Pittner, James J. Hughes III, Susan B. Greenberger, and Jennifer A. Flint, for appellees Toledo City School District Board of Education, Dayton City School District Board of Education, and Cleveland Metropolitan School District Board of Education.

Marshall & Marshall, L.L.C., and Amy M. Natyshak, for appellee Toledo City School District Board of Education.

Jyllian R. Guerriero, for appellee Dayton City School District Board of Education.

Wayne J. Belock, for appellee Cleveland Metropolitan School District Board of Education.

Scott, Scriven & Wahoff, L.L.P., Patrick J. Schmitz, and Derek J. Towster, urging affirmance for amici curiae Ohio School Boards Association, Buckeye Association of School Administrators, Ohio Association of School Business Officials, Ohio Education Association, and Ohio Federation of Teachers.

Peck, Shaffer & Williams, Thomas A. Luebbers, and Michael T. Dean, urging affirmance for amicus curiae County Commissioners Association of Ohio.

_____